ROBERT W. DICKERSON, (SBN 89367)
 rdickerson@zuberlaw.com
ARMAND F. AYAZI, (SBN 162893)
 aayazi@zuberlaw.com
MEREDITH A. SMITH  (SBN 281120)
 msmith@zuberlaw.com
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile:  (213) 596-5621

Attorneys for Plaintiff, Rumble, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RUMBLE, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>THE DAILY MAIL AND GENERAL TRUST PLC and its subsidiary ASSOCIATED NEWSPAPERS LTD dba THE DAILY MAIL, DAILYMAIL.COM and MAILONLINE, et al.,<br><br>            Defendants. | Case No. 2:17-cv-04977 PSG (SKx)<br><br>**PLAINTIFF RUMBLE, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT ASSOCIATED NEWSPAPERS LTD.'S MOTION TO DISMISS AMENDED COMPLAINT IN PART, AND TO TRANSFER VENUE**<br><br>*[Filed Concurrently with Declarations of Robert W. Dickerson and Chris Pavlovski, and [Proposed] Order]*<br><br>Date:    January 22, 2018<br>Time:    1:30 p.m.<br>Crtrm.:  6A |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................. 5

III.  THIS ACTION SHOULD REMAIN IN THE CENTRAL DISTRICT OF CALIFORNIA ................................................................................... 7

    A.    Defendant Concedes That The Central District Of California Is A Proper Venue For This Action ......................................................... 7

    B.    The Relevant Factors Weigh Heavily Against Transfer To The Southern District Of New York ...................................................... 8

          1.    The Central District of California Is A More Convenient Forum For The Majority of the Witnesses Likely To Testify at Trial, Including Third-Party Witnesses ...................... 10

          2.    Ease Of Access To Proof Does Not Favor Transfer................... 13

          3.    Rumble's Choice Of Forum Is Entitled To Substantial Deference ........................................................................... 14

          4.    California and This District Have A Local Interest In This Controversy ........................................................................ 16

          5.    Transfer To The More Congested Southern District Of New York Would Delay This Litigation ................................... 17

IV.   RUMBLE WITHDRAWS ITS UNFAIR COMPETITION CLAIM WITHOUT PREJUDICE ................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

5
*Arreola v. Finish Line*,
    No. 14-cv-03339, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014)....................17

6
*Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*,
    No. 10-cv-07892, 2011 WL 13217776 (C.D. Cal. May 2, 2011)..................11

7

8
*Brackett v. Hilton Hotels Corp.*,
    619 F. Supp. 2d 810 (N.D. Cal. 2008) ................................................10, 11, 17

9
*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998)............................................4, 10, 11, 12

10

11
*Commodity Futures Trading Comm'n v. Savage*,
    611 F.2d 270 (9th Cir. 1979)..............................................................................9

12
*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
    472 F. Supp. 2d 1183 (S.D. Cal. 2007) .............................................................7

13

14
*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986)....................................................................passim

15
*DeFazio v. Hollister Empl. Share Ownership Tr.*,
    406 F. Supp. 2d 1085 (E.D. Cal. 2005)......................................................12, 13

16

17
*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003)..........................................................................18

18
*Hendricks v. StarKist Co.*,
    No. 13-cv-729, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ....10, 12, 14, 16

19

20
*Home Indem. Co. v. Stimson Lumber Co.*,
    229 F. Supp. 2d 1075 (D. Or. 2001)...........................................................10, 15

21
*In re Ferrero Litig.*,
    768 F. Supp. 2d 1074 (S.D. Cal. 2011) .............................................................9

22

23
*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000).......................................................................8, 13

24
*Lony v. E.I. DuPont de Nemours & Co.*,
    886 F.2d 628 (3d Cir. 1989).............................................................................15

25

26
*Mercury Serv., Inc. v. Allied Bank of Texas*,
    117 F.R.D. 147 (C.D. Cal. 1987) ................................................................7, 11

27
*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000)............................................................................15

28

2529-1002 / 1007687.1

ii

*Sapan v. Dynamic Network Factory, Inc.*,
    No. 13-CV-1966, 2013 WL 12094829 (S.D. Cal. Nov. 25, 2013) .......... passim

*Shore to Shore Props., LLC v. Allied World Assurance*,
    No. 11-cv-01512, 2011 WL 4344177 (N.D. Cal. Sept. 15, 2011) ................. 17

*Steele v. United States of America*,
    No. 05-cv-2511, 2006 WL 618787 (N.D. Cal. Mar. 13, 2006) ................ 5, 18

*STX v. Trik Stik, Inc.*,
    708 F. Supp. 1551 (N.D. Cal. 1988) ..................................... 9, 11, 12

*Van Slyke v. Capital One Bank*,
    503 F. Supp. 2d 1353 (N.D. Cal. 2007) ................................ 9, 12, 13

*Vecron Exim Ltd. v. Stokes*,
    No. 217-C-2944, 2017 WL 3498620 (C.D. Cal. Aug. 15, 2017).......... 9, 14, 15

### Statutes

17 U.S.C. § 501 ........................................................................ 7

28 U.S.C. § 1404(a) ............................................................ 4, 7, 8

28 U.S.C. § 1406(a) ................................................................. 8

California Business & Professions Code § 17200 ................................. 7

### Other Authorities

17 Moore's Federal Practice
    § 111.13[1][c] (3d ed. 1997) ..................................................... 9

Federal Court Management Statistics,
    *Comparison Within Circuit During the 12-Month Period*
    *Ending June 30, 2017* ...................................................... 17

2529-1002 / 1007687.1

# I.   <u>INTRODUCTION</u>

Plaintiff Rumble, Inc. ("Rumble") hereby responds to Defendant Associated Newspapers Ltd.'s ("Defendant") Motion to Dismiss Amended Complaint In Part, and to Transfer Venue.  [Dkt. 14 ("Motion")].[1]

This Memorandum will first address the transfer portion of the Motion, and will show why it should be denied.  When the relevant facts and factors are considered, it isn't even a close call.  As will be shown, California (and Southern California in particular) and those residing here have a far greater connection to (and interest in the outcome of) this case than another other state, including New York:

- This case involves willful infringement by Defendant of copyrighted videos which have been exclusively licensed to Rumble by the original creators of the infringed videos (the "content creators") for Rumble to monetize and protect against infringement.[2]

- The content creators for the infringed videos at issue in this case clearly have an interest in the outcome of this case.  Five of these content creators

---

[1]  This Opposition is supported by the concurrently-filed Declarations of Chris Pavlovski ("Pavlovski Decl."), founder and CEO of Rumble, and of Robert W. Dickerson ("Dickerson Decl."), counsel for Rumble.

[2]  That Defendant is a serial, willful infringer of copyrights seems beyond dispute. *See, e.g.*, the allegations in paragraph 22 of the First Amended Complaint ("Am. Compl."), which cites to articles about Defendant's practices, one entitled "Need More Video Content? Try Stealing Some."  This article states: "Video owners say the publisher [Defendant] is taking their content without permission, dropping it in its proprietary player, and then selling ads against it to major advertisers such as Doritos."  The other article, by a person previously a "freelancer" for Defendants, states that "the [Daily] Mail's editorial model depends on little more than dishonesty, theft of copyrighted material, …."  Therefore, the infringement of the videos in this case (which cannot in good faith be disputed) is not a one-off, isolated instance, but part of Defendant's playbook.

1

reside in Southern California, whereas only one resides in New York. Pavlovski Decl. ¶ 7.[3]

▪  Other content creators who have licensed their videos to Rumble also have an interest in the outcome of this case, as it is in their interest to have willful infringers like Defendant be penalized for their infringement such that it will stop infringing.  A large number of Rumble's content creators reside in California, as Rumble pays out more money to content creators and publishers in California than any other state.  *Id.* ¶ 7.[4]

▪  It is not only the content creators who have an interest in the outcome of this case.  Other companies with whom Rumble does business, having chosen to use Rumble's platform to avoid infringing and to compensate Rumble's content creators, also have an interest in ridding the industry of those who prefer to infringe, and thereby unfairly compete.  The majority of those other companies reside in California, as Rumble receives 90% of its revenue from companies in California (such as America's Funniest Home Videos, Google and Facebook).  *Id.* ¶¶ 5, 6.[5]

---

[3]  These local content creators are expected to be called to testify at trial on the issues of liability and damages, to explain to the jury how and why they utilize Rumble's platform, that they had not authorized Defendants to use their videos, and how Defendant is a known serial infringer of video content, such that enhanced damages and attorney fees should be awarded to Rumble (and through Rumble, also to them).  For them, traveling to New York would of course be inconvenient.

[4]  It is fair to say that even those content creators who have not yet licensed videos to Rumble also have an interest in seeing that willful infringers such as Defendant are brought to task.  It is also fair to assume that many such creators reside in California and Southern California in particular.

[5]  Representatives of some of these other California-based companies are also expected to be called to testify at trial as to how and why they utilize Rumble's platform, how Defendant is known to be a serial infringer, how revenues are generated by them and Defendant on the use of video content, and how it is in the best interests of the industry that Defendant be properly amerced for its past

- ▪ Obviously, given the facts above, and given Rumble's relationships with content creators and others located here, California, and in particular Southern California, are very important to Rumble. In fact, the entire management team for Rumble (CEO, CTO, CCO and CFO) each has a company-provided cellphone with a "213" area code number, and not for any other area in the United States. These phones were acquired for business reasons unrelated to this litigation. *Id.* ¶ 9.

- ▪ California and in particular Southern California is also important to Defendant. Its first office/newsroom in the United States was established in Los Angeles in July 2010, and is still here. Dickerson Decl. ¶ 2 & Ex. A. (Tellingly, this fact was not mentioned in Defendant's Motion, or the Snell Declaration in support which refers only to editors in Los Angeles).

- ▪ Defendant aggressively and specifically targets viewers in California and Southern California, and uses California and in particular, Los Angeles, to attract viewers to its website. *Id.* ¶¶ 3-5 & Exs. C-D.

- ▪ Defendant has previously been hailed into court and defended itself in the Central District of California. *Id.* ¶ 6 & Ex. E.[6]

In light of these facts, Defendant's allegations of inconvenience are shown to be quite weak, particularly considering Defendant's and Rumble's well-established ties with this district. Defendant's Motion is, at best, an improper attempt to

_____

infringement, and permanently enjoined as to future infringement.

[6]  It is thus unsurprising that Defendant does not argue that it would suffer hardship to defend this lawsuit in the Central District of California because to so argue would be disingenuous. Defendant is a large international company that conducts business all over the world, not to mention throughout the United States. Given its business practices, it has been sued often, including in this District. It is quite capable of defending itself here.

1  prioritize its preferred forum and to shift its minor inconveniences of the lawsuit to

2  major inconvenience to Rumble and the likely third-party trial witnesses.[7]

3       The law is clear that "[a] transfer will not be ordered if the result is merely to

4  shift the inconvenience from one party to another."  *Cochran v. NYP Holdings, Inc.*,

5  58 F. Supp. 2d 1113, 1120 (C.D. Cal. 1998) (internal quotation marks omitted)

6  (citations omitted).  Defendant fails to present the "strong showing of inconvenience"

7  required to override Rumble's choice of forum under 28 U.S.C. § 1404(a).  *Decker*

8  *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

9       As shown herein, Defendant's Motion is entirely without merit.  Granted,

10  some of the facts discussed above and in the accompanying Declarations were not

11  previously known to Defendant.  Therefore, Defendant can perhaps be given the

12  benefit of the doubt that its filing of the Motion was not in bad faith.  Now,

13  however, Defendant is fully aware of the facts establishing that its Motion to

14  Transfer is meritless.  Rather than waste the Court's time and cause further expense

15  to Rumble, Defendant should now voluntarily withdraw its request to transfer or be

16  wary of the Court's discretionary power to reprimand such frivolous motion

17  practice.[8]

18  _____

19  [7]  At worst, it is merely an attempt to delay and to increase the expense of litigation

20  for Rumble.  Given the material facts omitted and misstated in the Motion and
supporting Snell Declaration, it seems the latter is more likely the case.

21  [8]  In this regard, it is significant that the Snell Declaration in Support of the Motion

22  also left out material facts that <u>were known</u> to her and to Defendant.  In addition,
where the editors who uploaded the infringed videos (as stated in the Snell

23  Declaration) reside is largely or entirely irrelevant, as there is no dispute that the
infringed videos were illegally uploaded and used by Defendant on its website to

24  generate advertising revenue.  If the editors are even called to testify in person at
trial, it will most likely be by Defendant, so no compulsory process as to them will

25  be needed.  Moreover, as between the serial, willful infringer Defendant, and the

26  editors who uploaded the infringed videos on the one hand, and on the other hand,

27  Rumble, the content creators, and the many California-based companies doing
things the right way, it is Defendant and its editors who should bear any

28

1    As to Defendant's request to dismiss Rumble's unfair competition claim

2  (Mot. at 3-4), Rumble agrees to withdraw its unfair competition claim.  However,

3  the parties are still in the nascent stages of litigation, and Rumble may uncover

4  during discovery evidence to support an unfair competition claim.  *See Steele v.*

5  *United States of America*, No. 05-cv-2511, 2006 WL 618787, at *2 (N.D. Cal.

6  Mar. 13, 2006).  Thus, Rumble requests that the Court dismiss its unfair competition

7  claim <u>without</u> prejudice.[9]

8  **II.    FACTUAL BACKGROUND**

9    Rumble is a Canadian corporation with its principal place of business in

10  Toronto, Canada.  Am. Compl. ¶ 1; Pavlovski Decl. ¶ 2.  Rumble operates an open

11  video platform that sources, validates, and provides clearance management,

12  distribution, and monetization for video content.  Am. Compl. ¶ 9; Pavlovski Decl.

13  ¶ 2.  Content creators upload their videos to Rumble.com, and Rumble makes these

14  videos available to websites for monetization.  Am. Compl. ¶ 1; Pavlovski Decl. ¶ 2.

15  Rumble enables amateur and professional video content creators, media companies,

16  and celebrities to distribute and monetize their social videos.  Am. Compl. ¶ 13;

17  Pavlovski Decl. ¶ 3.  Rumble also provides to those companies that want to avoid

18  copyright infringement a platform that enables them to pay for the lawful right to

19  use content on their websites without having to validate the lawful owner of each

20

21

22  inconvenience.

23  [9]  During the meet-and-confer process that preceded the filing of the Motion,
Rumble's counsel told Defendant's counsel that Rumble would "be willing to

24  dismiss the 17200 claim without prejudice, subject to amending to restate after we

25  take some discovery."  Defendant did not respond to that offer.  Rumble suspects
that discovery will uncover other bad acts by Defendant that may provide a basis for

26  a 17200 claim, among others.  If so, it will move to amend at that time.  Therefore,

27  even if the current 17200 claim were dismissed with prejudice, that would and
should apply only to a 17200 claim that is based solely on copyright infringement,

28  as opposed to some other basis.

1  video, seek authorization to use the content from each individual content creator, or

2  negotiate the royalty for such use.  Pavlovski Decl. ¶ 4.

3      California, and in particular Southern California, is a very important region of

4  the United States for Rumble.  *Id.* ¶ 5.  Southern California is home to more of

5  Rumble's content creators than any other region.  *Id.* ¶ 7.  Rumble pays out more

6  money to content creators and publishers in California than any other state.  *Id.*

7  Moreover, Rumble earns approximately 90% of its revenue from companies located

8  in California, including Southern California (such as America's Funniest Home

9  Videos, Google, and Facebook, among many others).  *Id.* ¶ 5.  Indeed, Rumble's ties

10  with Los Angeles are so substantial that each of its executive staff has a company-

11  provided phone with a "213" (Los Angeles) area code, and not for any other

12  location in the United States.  *Id.*

13      Defendant is a limited liability company with offices both in the United States

14  and the United Kingdom.  Mot. at 1.  Defendant operates the website MailOnline,

15  which is located at the URL www.dailymail.com.  *Id.* at 2.  MailOnline covers

16  events of general interest, including politics and celebrity news.  *Id.*  As of

17  December 18, 2014, MailOnline had approximately 200 employees in the United

18  States, and approximately 600 or more members of its "global team."  Dickerson

19  Decl., Ex. A.  Defendant aggressively and specifically targets viewers in California,

20  and in particular Southern California, and also uses articles about Los Angeles, its

21  tourist attractions, and its inhabitants to attract viewers.  *Id.* ¶¶  3-5 & Exs. C-D.

22      Defendant has extensive contacts with Los Angeles.  One of Defendants' two

23  offices in the United States is in Los Angeles.  *Id.* ¶ 2 & Ex. A.  In fact, the Los

24  Angeles office was Defendant's first office in the United States, where it opened in

25  July 2010.  *Id.*  Defendant currently highlights its Los Angeles office/newsroom on

26  its careers website.  *Id.* ¶ 2 & Ex. B.

27      As set forth in the Complaint, Rumble and Defendant entered into a "Video

28  Content, License Agreement" on September 1, 2014 (the "License Agreement"),

1   whereby Defendant was to pay Rumble certain sums for the use of Rumble's videos.

2   Am. Compl. ¶ 17 & Ex. B.  After Defendant sent Rumble a letter terminating the

3   License Agreement, Defendant published more than fifty of Rumble's videos without

4   authorization and in violation of its rights, even after being told to stop.  *Id*. ¶ 24 &

5   Ex. E.  With regard to the content creators of the copyrighted videos currently at

6   issue, Southern California is home to five content creators whereas New York is

7   home to only one.  Pavlovski Decl. ¶ 6.

8        On July 6, 2017, Rumble brought this action for copyright infringement under

9   17 U.S.C. §§ 501 *et seq*. and for unfair competition under Cal. Bus. and Prof. Code

10  §§ 17200 *et seq*.  [Dkt. 1.]  Rumble filed a First Amended Complaint on August 25,

11  2017 [Dkt. 10] and Defendant waived service on August 31, 2017 [Dkt. 13].[10]

12  **III.   THIS ACTION SHOULD REMAIN IN THE CENTRAL**

13  **        DISTRICT OF CALIFORNIA**

14  **        A.   Defendant Concedes That The Central District Of**

15  **             California Is A Proper Venue For This Action**

16       Defendant seeks to transfer this action from the Central District of California

17  to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  A

18  preliminary requirement for transfer under 28 U.S.C. § 1404(a) is that venue is

19  proper in the proposed transferor district court.  *See Costco Wholesale Corp. v.*

20  *Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1189 (S.D. Cal. 2007).  Section 1404

21  only permits transfer by a court that has jurisdiction and venue.  *See Mercury Serv.,*

22  *Inc. v. Allied Bank of Texas*, 117 F.R.D. 147 (C.D. Cal. 1987) (recognizing that in

23  _____

24  [10]  After the original complaint was filed, Defendant's counsel provided to Rumble's

25  counsel a copy of a declaration by an officer of Defendant that had been filed in

26  another case, and which set forth the corporate structure for the entities involved

27  here. The Amended Complaint was filed to reflect the corporate structure as stated

28  in that Declaration.  Defendant's counsel agreed only to waive service as to

    Defendant Associated Newspapers Ltd.  Rumble intends to take prompt discovery

    into other entities and individuals involved, and may then add them as parties.

1   analyzing whether to transfer an action, the "first step for the Court is to determine

2   whether venue . . . is permissible" in the transferor court).  If the court lacks

3   jurisdiction or venue, the appropriate motion is for dismissal or transfer pursuant to

4   28 U.S.C. § 1406(a).  *Id*.  Moreover, the language of 28 U.S.C. § 1404(a)—

5   permitting, under specific circumstances, transfer to "any <u>other</u> district or division

6   where [the action] might have been brought"—implies that there are no defects with

7   the current venue.

8          Thus, in moving for transfer under 28 U.S.C. § 1404(a), Defendant

9   necessarily concedes that the action was properly brought in the first instance in the

10  Central District of California.  Defendant merely argues that Rumble could have

11  originally filed suit in the Southern District of New York as well.  Mot. at 5-6.  That

12  the action "might have been brought" in the Southern District of New York does not

13  preclude the Central District of California from being a proper forum.  *See Sapan v.*

14  *Dynamic Network Factory, Inc.*, No. 13-CV-1966, 2013 WL 12094829, at *3 (S.D.

15  Cal. Nov. 25, 2013) ("Here, although venue may be proper in the Northern District,

16  it does not foreclose venue from *also* being proper in the Southern District.").  As

17  implied by Defendant's Motion, this action was properly brought in this Court.

18       **B.**    <u>**The Relevant Factors Weigh Heavily Against Transfer To**</u>

19               <u>**The Southern District Of New York**</u>

20          28 U.S.C. § 1404(a) "requires the court to determine that the transfer is

21  <u>necessary</u> for convenience of the parties and witnesses, and further, that it is in the

22  interest of justice to do so."  28 U.S.C. § 1404 (emphasis added).  In analyzing the

23  necessity of transfer, courts have found a number of factors to be relevant, including

24  "private" factors such as the respective parties' contacts with the forum, the

25  availability of compulsory process to compel attendance of non-party witnesses, the

26  ease of access to sources of proof, and the plaintiff's choice of forum.  *See Jones v.*

27  *GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  Other "public" factors

28  that can be considered in determining the interest of justice include the forum's

1  interest in the controversy and the relative court congestion in the two fora.  *See*

2  *Vecron Exim Ltd. v. Stokes*, No. 217-C-2944, 2017 WL 3498620, at *1 (C.D. Cal.

3  Aug. 15, 2017) (citing 17 Moore's Federal Practice § 111.13[1][c] (3d ed. 1997));

4  *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007).

5       "In seeking to transfer a case to a different district, a defendant bears the

6  heavy burden of proof to justify the necessity of the transfer."  *STX v. Trik Stik, Inc.*,

7  708 F. Supp. 1551, 1555 (N.D. Cal. 1988); *see also In re Ferrero Litig.*,

8  768 F. Supp. 2d 1074, 1078 (S.D. Cal. 2011) ("Defendant, as the moving party,

9  carries the burden of showing that transfer is warranted." (citing *Commodity Futures*

10  *Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).  "The defendant

11  must make a strong showing of inconvenience to warrant upsetting plaintiff's choice

12  of forum."  *Decker Coal*, 805 F.2d at 843 (emphasis added).  To that end, "there is a

13  strong presumption in favor of honoring a plaintiff's choice of forum."  *Sapan*, 2013

14  WL 12094829, at *3.  Furthermore, "the court must draw all reasonable inferences

15  and resolve all factual conflicts in favor of the non-moving party."  *Id*. at *2.  Only

16  in rare instances will an appellate court find that a trial court's decision not to

17  transfer is an abuse of discretion.  *See Commodity Futures Trading Comm'n*,

18  611 F.2d at 279.

19       As discussed below, Defendant cannot support its argument that New York is

20  a more convenient forum than Los Angeles, let alone carry its heavy burden to

21  justify transfer to another venue.  Defendant has indisputable ties with Los Angeles.

22  One of Defendants' two offices in the United States is in Los Angeles.  *See*

23  Dickerson Decl. ¶ 2 & Ex. A.  In fact, the Los Angeles office was Defendants' first

24  office in the United States.  *Id*. ¶ 2 & Ex. B.  Rumble also has extensive contacts in

25  Los Angeles, with it receiving and paying more money to individuals and entities

26  here than any other region in the United States.   Indeed, Rumble's ties with Los

27  Angeles are so substantial that each of its executive staff  has a company-issued

28  phone with a "213" (Los Angeles) area code.  Pavlovski Decl. ¶ 9.  Significantly,

1  the majority of third-party content creators who are anticipated to testify at trial are
2  located in Southern California.  *Id.* ¶ 7.

3              1.    **The Central District of California Is A More**
4                    **Convenient Forum For The Majority of the**
5                    **Witnesses Likely To Testify at Trial, Including**
6                    **Third-Party Witnesses**

7       "The convenience of witnesses is said to be the most important factor in
8  passing on a transfer motion."  *Hendricks v. StarKist Co.*, No. 13-cv-729,
9  2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (citations omitted).  "To
10  demonstrate inconvenience of witnesses, the <u>moving party must identify relevant</u>
11  <u>witnesses, state their location and describe their testimony and its relevance</u>."
12  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) (internal
13  quotation marks omitted) (citations omitted) (emphasis added).  "Rather than relying
14  on vague generalizations of inconvenience, the moving party must demonstrate,
15  through affidavits or declarations containing admissible evidence, who the key
16  witnesses will be and what their testimony will generally include."  *Cochran*, 58 F.
17  Supp. 2d at 1119 (internal quotation marks omitted) (citations omitted).

18       In  *Sapan*, the court concluded that the defendants had not met their burden
19  for a transfer on the basis that "Defendants have not identified the witnesses or the
20  number of witnesses they intend to call at trial."  2013 WL 12094829, at *4.  There,
21  the defendants offered a "broad description" of inconvenience that "fail[ed] to
22  demonstrate that the convenience of parties and witnesses, and the interests of
23  justice, would favor such a transfer."  *Id.*  The court also found that litigating in the
24  Southern District of California "clearly would not be an inconvenience" because "at
25  least one Defendant . . . has an office in San Diego."  *Id.*; *see also Home Indem.*
26  *Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1085 (D. Or. 2001) (noting that it
27  would be difficult to argue that it was "manifestly unfair" for a defendant to conduct
28  litigation in a district where he is located).

1   Here, since Defendant has long had an office in Los Angeles, and has litigated
2   here several times before, litigating in the Central District of California would not be
3   an inconvenience, and would certainly not be a hardship.  Dickerson Decl. ¶¶ 2, 6 &
4   Exs. A, E.  In fact, because of Rumble's extensive business dealing with companies
5   in this District, the Central District of California is a more convenient forum for the
6   parties on the whole (*see Mercury Serv.*, 117 F.R.D. at 155 (finding the Central
7   District of California to be the more convenient forum where one party was located
8   there and another traveled there for business)).

9   Defendant does not argue that it would be a hardship for its witnesses to
10  travel to Los Angeles.  Any potential gain to Defendant by transfer to the Southern
11  District of New York would be offset by the added inconvenience and cost to
12  Rumble and the likely trial witnesses located here.  As such, transfer is unwarranted.
13  *See STX*, 708 F. Supp. at 1556 ("If the gain to convenience to one party is offset by
14  the added inconvenience to the other, the courts have denied transfer of the
15  action."); *Cochran*, 58 F. Supp. 2d at 1120 ("A transfer will not be ordered if the
16  result is merely to shift the inconvenience from one party to another."); *Aspen Ins.*
17  *UK Ltd. v. Brown & Brown, Inc.*, No. 10-cv-07892, 2011 WL 13217776, *9 (C.D.
18  Cal. May 2, 2011) ("In assessing the convenience of a transfer of venue to the
19  parties, courts are cautious not to shift the cost and burden of litigation from the
20  defendant to the plaintiff.").

21  Moreover, Defendant has not provided witness information with adequate
22  specificity.  *See Cochran*, 58 F. Supp. 2d at 1119; *Brackett*, 619 F. Supp. 2d at 821;
23  *Sapan*, 2013 WL 12094829, at *4.  Defendant has not named a single witness via
24  affidavit or declaration who would be negatively affected by litigation in Los
25  Angeles.  Defendant has not identified the location or number of its witnesses.  *See*
26  Mot. at 7 (stating that Defendant's "employees reside either in London . . . or in

27
28

11

New York").[11]  Nor has Defendant provided what those witnesses' testimonies will include.  Although Defendant suggests that the location of its uploading editors in New York or London is pivotal (*id.* at 7), Defendant has not demonstrated how their testimony will be relevant to any issue at trial.  As such, Defendant fails the particularity requirement articulated in *Cochran*.  58 F. Supp. 2d at 1119.[12]

Notwithstanding the above, because parties may compel their employees to testify at trial, the most important factor in determining transfer is the location of third-party witnesses.  *Hendricks*, 2014 WL 1245880, at *3; *STX*, 708 F. Supp. at 1556 (discounting the inconvenience of a party's employee witnesses because litigants can compel their employees to testify at trial, regardless of the forum); *see also Van Slyke*, 503 F. Supp. 2d at 1364 (recognizing that "the overall quality of the trial is better in the venue where more unaffiliated witnesses can be compelled to testify").  Defendant acknowledges the relevance of the testimony of the third-party content creators.  *See* Mot. 7 n.2.  Defendant, however, does not allege that New York is a more convenient forum for those witnesses.  *Id*.  To the contrary, more of the third-party content creators are located in Southern California than in New York:  Southern California is home to five content creators, whereas New York is home to only one.  Pavlovksi Decl. ¶ 5.  Defendant has "failed to identify any non-party witnesses by name and to describe how maintaining this suit in California would affect them."  *DeFazio v. Hollister Empl. Share Ownership Tr.*, 406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005); *see also Aspen Ins. UK Ltd.*, 2011 WL 13217776,

_____

[11] This, of course, is patently <u>not</u> true.  Defendant has long had an office/newsroom and employees in Los Angeles.  It is difficult to believe this misstatement of material fact was made inadvertently.

[12]  Defendant should not be allowed to attempt to now state such facts in its Reply.  It had its chance to do so, and such facts, if they existed, should have been set forth in and with the Motion to allow Rumble an opportunity to review, respond and rebut.  Any such attempt by Defendant to augment now should be ignored by the Court.

1    at *9 ("The fact that numerous non-party witnesses are located in California, and

2    that [defendant] has failed to identify a single non-party witness located in Arizona,

3    thus weighs in favor of denying transfer to the District of Arizona."). As such, this

4    factor weighs against transfer.

5            2.    **Ease Of Access To Proof Does Not Favor Transfer**

6          In assessing the ease of access to proof, courts look at the location of records

7    and documents. *See Jones*, 211 F.3d at 499; *Decker Coal*, 805 F.2d at 843. Similar

8    to the specificity requirement for witnesses, "general allegations that transfer is

9    needed for the ease of obtaining records and books are not enough. The moving

10   party must show the location and the importance of the documents in question."

11   *DeFazio*, 406 F. Supp. 2d at 1091 (citations omitted) (internal quotation marks

12   omitted). In *DeFazio*, the court affirmed the denial of the motion to transfer venue,

13   finding that although defendants "generally state[d] that the relevant records and

14   documents [were] generated and maintained at their Illinois headquarters,"

15   defendants "fail[ed]… to explain or provide any insight into how they might suffer

16   hardship or prejudice by having to defend this action in this district." *Id*. Here,

17   Defendant has not alleged "the location and the importance of the documents in

18   question" with the required specificity. *Id*. Defendant merely asserts, without any

19   support or further detail, that "the majority of the documentary evidence in this case

20   will be located either with plaintiff in Toronto, or with [Defendant] in New York or

21   London." Mot. at 8.

22         Additionally, this factor is "of diminished importance" when determining

23   whether to grant a motion to transfer. *Van Slyke*, 503 F. Supp. 2d at 1362-63.

24   "With technological advances in document storage and retrieval, transporting

25   documents generally does not generally create a burden." *Id.* at 1362. Accordingly,

26   in weighing this factor, courts consider whether the moving party convincingly

27   describes how "transporting records, or reducing them to electronic form, would

28   cause them significant hardship." *Id*. Defendant, however, does not forward such

1  an argument; it merely states where their documents are located.  Mot. at 8.

2  Defendant fails to demonstrate how, in these days of electronic discovery, it would

3  be difficult to access proof in the Central District of California.  Defendant's

4  argument is particularly unpersuasive given that they have an office in Los Angeles.

5  Dickerson Decl. ¶ 2 & Ex. A.  This factor weighs heavily in favor of proceeding

6  with the case in the Central District of California.

7             3.  **Rumble's Choice Of Forum Is Entitled To**

8                 **Substantial Deference**

9       "[T]here is a strong presumption in favor of honoring a plaintiff's choice of

10  forum."  *Sapan*, 2013 WL 12094829, at *3.  Generally, a "defendant must make a

11  strong showing of inconvenience to warrant upsetting the plaintiff's choice of

12  forum."  *Decker Coal*, 805 F.2d at 843.  "Substantial weight is accorded to the

13  plaintiff's choice of forum, and a court should not order a transfer unless the

14  'convenience' and 'justice' factors set forth above weigh heavily in favor of venue

15  elsewhere."  *Vecron Exim Ltd.*, 2017 WL 3498620, at *2 (citations omitted).

16       A court may not automatically accord less deference to a plaintiff's choice of

17  forum because the plaintiff is foreign.  Even where the plaintiff is not suing in its

18  home forum, "consideration must be given to the extent [sic] both of the defendant's

19  . . . contacts with the chosen forum and of the plaintiff's contacts, including those

20  relating to his cause of action."  *Aspen Ins. UK Ltd.*, 2011 WL 13217776, at *6

21  (citations omitted) (internal quotation marks omitted); *see also Hendricks*, 2014 WL

22  1245880, at *3 ("[W]hen there is no evidence that plaintiffs engaged in forum

23  shopping and both plaintiffs and defendant have significant contacts with the

24  [plaintiffs' choice of forum], plaintiffs' choice of forum carries significant weight."

25  (citations omitted) (internal quotation marks omitted)).[13]

26       _____

27  [13]  There is absolutely no evidence of forum-shopping, nor could there be.  In

28  addition to the facts showing Rumble's close connection to, and the importance of,

1    In *Lony v. E.I. DuPont de Nemours & Co.*, the Third Circuit Court of Appeals

2  held that it was reversible error for the district court to accord insufficient deference

3  to a foreign plaintiff's choice of forum, and that the district court "must assess

4  whether the considerable evidence of convenience has . . . overcome any reason to

5  refrain from extending full deference to the foreign plaintiff's choice." 886 F.2d

6  628, 634 (3d Cir. 1989). The court explained that the reason for giving a foreign

7  plaintiff's choice less deference is "merely a reluctance to assume that the choice is

8  a convenient one." *Id*. However, "that reluctance can readily be overcome by a

9  strong showing of convenience." *Id*.; *see, e.g.*, *Home Indem. Co.*, 229 F. Supp. 2d

10  at 1085-86 (denying motion to transfer, in part because foreign plaintiffs' choice of

11  forum is "still accorded some weight" and "makes sense given that [defendant] is

12  located" there). The Ninth Circuit Court of Appeals agreed with the reasoning of

13  the Third Circuit, holding that a district court abused its discretion in denying

14  foreign plaintiffs their choice of forum, in light of the overall convenience of the

15  chosen forum. *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)

16  (citing *Lony*, 886 F.2d at 633). Indeed, in *Home Indemnity Co.*, a court in the

17  District of Oregon deferred to the plaintiff's choice of forum even where none of the

18  plaintiffs were headquartered there. 229 F. Supp. 2d at 1085-86.

19    Here, both Rumble and Defendant have strong ties to the Central District of

20  California. *See* Br. at 9-10, *supra*. Moreover, as discussed above, the Central

21  District is a convenient location for both parties and witnesses. *See id.* at III.B.1,

22  *supra*. As such, Rumble's choice of forum should be accorded the requisite

23  deference. *See Vecron Exim Ltd.*, 2017 WL 3498620, at *2 (court should not order

24  a transfer unless the convenience and justice factors weigh heavily in favor of venue

25  elsewhere); *Sapan*, 2013 WL 12094829, at *3 (strong presumption in favor of

26  honoring a plaintiff's choice of forum); *Decker Coal*, 805 F.2d at 843 (defendant

27  _____

28  California and this District in particular, Rumble's counsel resides here, and is
counsel to Rumble not only in this litigation, but on other legal matters as well.

1    must make a strong showing of inconvenience to warrant upsetting the plaintiff's

2    choice of forum).

3              4.    **California and This District Have A Local Interest**

4                   **In This Controversy**

5        One of the public factors examined by courts is whether California has an

6    interest in the controversy. *See Decker Coal*, 805 F.2d at 843.  California has a

7    material interest in this controversy because, as discussed above, both Rumble and

8    Defendant conduct a substantial amount of business in California. *See, e.g.*,

9    Dickerson Decl. ¶¶ 2-3 & Ex. A; Pavlovski Decl. ¶¶ 5, 9.  Notably, public sources

10   report that Defendant's willful infringement is a part of Defendant's standard

11   operating procedure. *See* Am. Compl. ¶ 22.  As such, California has a strong

12   interest in deterring Defendant's unlawful business practices within its borders. *See*

13   *Hendricks*, 2014 WL 1245880, at *6 (recognizing that a forum has an interest "in

14   preventing fraudulent practices by companies doing business within its borders");

15   *Van Slyke*, 503 F. Supp. 2d at 1365 (agreeing that "keeping this action in California

16   serves the state's interest in preventing fraudulent practices which may have an

17   effect" in California (internal quotation marks omitted)).

18       Defendant fails to demonstrate that New York's interest in this case is

19   sufficiently more compelling to warrant transfer.  For example, Defendant's

20   argument that New York has a strong interest in this case because Defendant has an

21   office in New York and "regularly does business there" (Mot. at 8) applies equally

22   to California, where Defendant also has an office (Dickerson Decl. ¶ 2 & Ex. A).  In

23   addition, Rumble earns 90% of its revenue from companies located in California

24   and has material contacts with California whereas it does not in New York.  Rumble

25   also pays out more money to entities and individuals in California than any other

26   state. *See* Pavlovski Decl. ¶¶ 5, 9.  This first public factor strongly favors proceeding

27   with the case in the Central District of California.

28

5.     **Transfer To The More Congested Southern District**
**Of New York Would Delay This Litigation**

Another public factor used to determine whether transfer is warranted is the relative congestion of the courts. *See Decker Coal*, 805 F.2d at 843. Rumble does not dispute that "[t]o measure congestion, courts compare the two fora's median time from filing to disposition or trial." Mot. at 9 (citing *Shore to Shore Props., LLC v. Allied World Assurance*, No. 11-cv-01512, 2011 WL 4344177, at *6 (N.D. Cal. Sept. 15, 2011)); *see also Arreola v. Finish Line*, No. 14-cv-03339, 2014 WL 6982571, at *11 (N.D. Cal. Dec. 9, 2014) (finding that a longer median time from filing to disposition by 2.6 months was "not insignificant"). Defendant, however, incorrectly states in its Motion that "the median time from filing to disposition for the Southern District of New York is shorter than the Central District of California." Mot. at 9. Indeed, according to Defendant's own authority cited for this proposition, the opposite is true: the median time from filing to disposition is <u>longer</u> in the Southern District of New York than the Central District of California by 3.6 months. *See* Federal Court Management Statistics, *Comparison Within Circuit During the 12-Month Period Ending June 30, 2017*, available at:

> http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/06/30-3.

Moreover, "[t]he delay resulting from a transfer, even one made in a case this young, can be significant." *Brackett*, 619 F. Supp. 2d at 821. Therefore, granting Defendant's request would be to transfer this action to a more congested forum and significantly delay resolution of this matter. This public factor likewise weighs against transfer.[14]

---

[14] Yet again, a material factual statement by Defendant has been shown to be a misstatement of fact – this time shown by the very document that Defendant cites to as support for its (mis)statement. And again, it is difficult to believe this was inadvertent. The Court can and should take this into consideration not only as to the

1    As demonstrated above, Defendant fails to justify why transfer to New York

2  is necessary.  To the contrary, the convenience of the parties and witnesses as well

3  as the interest of justice favor this district as the venue for this action.  The Court

4  should deny Defendant's request to transfer.

5  **IV.    RUMBLE WITHDRAWS ITS UNFAIR COMPETITION**

6  **CLAIM WITHOUT PREJUDICE**

7    As mentioned above, Rumble had previously offered to withdraw its unfair

8  competition claim without prejudice.  Because Rumble may uncover additional

9  evidence to support an unfair competition claim as discovery progresses, Rumble

10  requests the right to amend its complaint to assert a 17200 claim under the

11  appropriate circumstances.  *See Steele*, 2006 WL 618787, at *2 (granting dismissal

12  without prejudice, with the opportunity to amend upon "further discovery"); c*f.*

13  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

14  ("Dismissal with prejudice and without leave to amend is not appropriate unless it is

15  clear on de novo review that the complaint cannot be saved by amendment.").

16  **V.    CONCLUSION**

17    Based on the foregoing, the Court should deny Defendants' request to transfer

18  this case to the Southern District of New York.  The Court should dismiss Rumble's

19  unfair competition claim without prejudice.

20

21  Dated:  December 29, 2017        Respectfully submitted,

22                                  **ZUBER LAWLER & DEL DUCA LLP**

23                                  ROBERT W. DICKERSON
                                    ARMAND F. AYAZI

24                                  MEREDITH A. SMITH

25                                  BY:    */s/ Robert W. Dickerson*

26                                       Attorneys for Plaintiff, Rumble, Inc.

27  _____

28  merits of the Motion, but what additional action the Court might take if Defendant
   does not now voluntarily withdraw its Motion to Transfer.